**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

LOU-CON, INC.                                          CIVIL ACTION

VERSUS                                                NO: 25-2054

ARTHUR J. GALLAGHER & CO.                              SECTION: T (5)

### ORDER AND REASONS

Before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant Arthur J. Gallagher & Co. ("AJG") (R. Doc. 9). AJG's Motion asks this Court to dismiss the claims brought against it by Plaintiff, Lou-Con, Inc. ("Lou-Con"), arguing that such claims are perempted and, alternatively, that Plaintiff has not pled the breach of any recognized duty nor any cognizable loss. R. Doc. 9-1, p. 1. Lou-Con has responded in opposition, arguing that Illinois law governs the agreement between the parties, so Louisiana's one-year peremptive period does not apply. R. Doc. 14, p. 1. In the alternative, Lou-Con argues that, even if Louisiana law applies, the claims are not perempted because the suit was filed within one year of discovery of the loss. *Id.* at pp. 1-2. AJG has replied in support of its Motion, R. Doc. 17, and Lou-Con has filed a brief sur-reply addressing apparent inaccuracies in AJG's reply, R. Doc. 20. Having considered the parties' arguments, the record, and the applicable law, it is the judgment of the Court that AJG's Motion should be **DENIED.**

## I. BACKGROUND

Plaintiff, Lou-Con, Inc. ("Lou-Con") owns and operates an approximately 33,000-square-foot industrial fabrication shop ("the Building") in Meraux, Louisiana. R. Doc. 9-1, p. 2 (citing R.

1

Doc. 1-1, p. 2); R. Doc. 14, p. 3. Defendant Arthur J. Gallagher & Co. ("AJG") served as Lou-Con's insurance broker for over a decade. R. Doc. 9-1, p. 2 (citing R. Doc. 1-1, pp. 2-3). AJG would annually renew coverage at Lou-Con's request and, until 2024, maintained a policy providing "replacement cost value coverage for the Building with limits of $700,000.00." *Id.* (citing R. Doc. 1-1, pp. 2-3).

For the 2024 to 2025 renewal period, Lou-Con alleges that AJG advised that the Building's limit of $700,000.00 was no longer correct and that the Building replacement value had to be increased to $1,700,000.00 for the insurer, AGCS Marine Insurance Company ("Allianz"), to provide coverage. *Id.*; R. Doc. 14, p. 3. Lou-Con further alleges that AJG gave it "less than a week" to decide whether to accept the increased limit and represented that Allianz required the increased limit on a "take it or leave it" basis. R. Doc. 14, p. 3.

Lou-Con next alleges that it questioned the increase because the proposed $1,700,000.00 limit was more than double the prior policy limit and exceeded a $650,000.000 appraisal Lou-Con had obtained for the Property. *Id.* at pp. 3-4. Lou-Con also alleges that it discussed with AJG how the increased valuation would affect a partial loss, including whether the increased valuation would correspondingly affect the valuation of individual building components.[1] *Id.* at p. 4. Lou-Con contends that it relied on AJG's advice, recommendations, and representations and agreed to the coverage with the understanding that any loss, particularly a partial loss, would be compensated at a rate tied to the $1,700,000.00 valuation. *Id.* at p. 5. With this understanding, Lou-Con consented to AJG placing the coverage and paid a $41,032.00 premium for the Policy. *Id.*; R. Doc. 9-1, p. 3.

---

[1] "That is, [whether] a higher valuation directly represents a higher per square foot value for repairs and replacement of any Building component. Lou Con told AJG that in the event of a partial loss, simply using an Xactimate or similar insurance-based estimate would not be appropriate and would result in a lower than appropriate value. Rather, an assembly of component valuations would be necessary to show how the components equaled the much higher $1,700,000.00 valuation. AJG did not push back and left Lou-Con with this understanding." R. Doc. 14, p. 4.

2

After Lou-Con signed AJG's Proposal for Insurance ("the Proposal"), under which it elected a $1,700,000.00 limit and Actual Cash Value ("ACV") valuation for property losses, AJG procured coverage with Allianz under Policy Number SML93049703, effective May 1, 2024, to May 1, 2025. R. Doc. 9-1, pp. 3-4. The Proposal specifically provides that it and its terms "are governed by the laws of the State of Illinois, without regard to its conflict of law rules." R. Doc. 9-6, p. 43. It also contains a dispute-resolution provision requiring mediation and, if necessary, binding arbitration for disputes between the parties. *Id.* at p. 42.

Lou-Con alleges that, on September 11, 2024, the Building's roof was substantially damaged and required replacement. R. Doc. 9-1, p. 4. Lou-Con reported the claim, and Allianz's independent adjuster estimated the replacement cost of the roof damage to be $479,972.88. *Id.* Lou-Con argues that, based on the $1,700,000.00 valuation, the roof replacement should have been valued at $800,000.00. *Id.* Lou-Con further alleges that although AJG represented the Policy as replacement-cost coverage, Allianz only paid the actual cash value of the repairs, $399,884.26, with no recoverable depreciation. *Id.* AJG disagrees, contending that Lou-Con's argument is "based on its misunderstanding that the $1,700,000 building valuation should be proportionately applied to each component part" and noting that Lou-Con does not allege that it actually paid $800,000 or any amount above the insurer's ACV payment. *Id.*

Lou-Con initially filed suit in the Thirty-Fourth Judicial District Court for the Parish of St. Bernard on August 19, 2025, R. Doc. 1, p. 1.; R. Doc. 1-1, p. 1, and AJG timely removed the action to this Court, invoking diversity jurisdiction, R. Doc. 1, pp. 1-3. Lou-Con's Petition claims that AJG breached its representation that it would obtain coverage paying a partial loss based on the $1,700,000.00 valuation of the Building, which Lou-Con argues required proportionate application of value to each component of the building. R. Doc. 1-1, p. 7. Alternatively, Lou-Con alleges that

3

AJG negligently overvalued the Building, thereby increasing Lou-Con's premium for excessive coverage while disregarding that valuation when the roof-loss claim occurred. *Id.* Lou-Con seeks the difference between what the value of the loss allegedly should have been based on AJG's $1,700,000.00 valuation and what Allianz paid under the Policy, along with interest, costs, and other available remedies. *Id.*

AJG's Motion to Dismiss argues that Lou-Con's claims against it fail for the following reasons: First, it alleges that Lou-Con's claims are perempted under Louisiana Revised Statute § 9:5606 because Lou-Con had actual or constructive knowledge of the alleged deficiencies in coverage upon receipt of the insurance Proposal and Policy. R. Doc. 9-1, pp. 6-12. Second, AJG contends that Lou-Con's Petition fails to state a claim because it does not allege the breach of any legally recognized duty, and third, AJG argues that the Petition fails to state a claim because it does not allege any cognizable damages. *Id.* at pp. 12-19.

Lou-Con opposes the Motion to Dismiss, arguing that the Proposal's choice-of-law provision requires application of Illinois law, thereby rendering Louisiana's peremption statute inapplicable. R. Doc. 14, p. 8-13. Alternatively, Lou-Con contends that, even if Louisiana law governs, its claims are timely because it did not discover AJG's alleged misconduct until Allianz adjusted the September 2024 property loss. *Id.* at p. 13-16. Lou-Con further argues that its Petition plausibly alleges claims for failure to procure requested coverage and negligent overvaluation, and it requests, in the alternative, that the Court stay this matter pending arbitration pursuant to the Proposal's arbitration clause. *Id.* at pp. 16-25.

AJG filed a reply in support of its Motion, arguing that Louisiana law governs Plaintiff's tort claims notwithstanding the Proposal's choice-of-law provision, that Plaintiff's claims are perempted, and that Plaintiff improperly raises arbitration for the first time in its opposition. R.

Doc. 17. With leave of Court, Lou-Con filed a sur-reply responding to arguments raised in AJG's reply concerning the choice-of-law provision and arbitration. R. Docs. 19, 20. The Motion is now before the Court.

## II. LAW AND ANALYSIS

### a. *Motion to Dismiss Standard Under Rule 12(b)(6)*

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to seek dismissal of a complaint based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

In evaluating a complaint under Rule 12(b)(6), the district court should confine itself to the pleadings, *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004), and the documents attached to the complaint, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). However, the court "may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

The court's review must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). A

complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Additionally, courts may not rely on "legal conclusions that are disguised as factual allegations." *Jeanmarie v. United States*, 242 F.3d 600, 603 (5th Cir. 2001) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)). If factual allegations are insufficient to raise a right to relief above the speculative level, the claim should be dismissed. *Twombly*, 550 U.S. at 555.

### b. *Peremption and Choice of Law*

Because AJG argues that Louisiana's peremptive statute governs while Lou-Con relies on the Proposal's Illinois choice-of-law provision, the Court must first determine which state's substantive law applies to Lou-Con's claims. AJG argues that Lou-Con's claims are governed by Louisiana law and are therefore subject to the one-year peremptive periods[2] established by Louisiana Revised Statute § 9:5606.[3] R. Doc. 17, p. 2.; R. Doc. 9-1, p. 7. Lou-Con, meanwhile,

---

[2] "Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." La. Civ. Code art. 3458. Peremption need not be pleaded, La. Civ. Code art. 3460, and it "may not be renounced, interrupted, or suspended, La. Civ. Code art. 3461. "Peremptive rights are not subject to *contra non valentum*, which otherwise would toll the limitations period until the cause of action is discovered." *Travelers Cas. & Sur. Co. of Am. v. Wright Ins. Agency Inc.*, 404 F.3d 927, 929 (5th Cir. 2005) (citing *Reeder v. North,* 701 So.2d 1291, 1298 (La. 1997)).

[3] Under the Louisiana Civil Code, an "action for damages against any insurance agent, broker, solicitor, or other similar licensee under the state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought . . . within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered." La. R.S. § 9:5606(A). Additionally, no action shall be filed after "three years from the date of the alleged act, omission, or neglect," regardless of when it was discovered. *Id.* The statute clarifies that these limitation periods are "peremptive periods within the meaning of Civil Code Article 3458"[3] and "may not be renounced, interrupted, or suspended." La. R.S. § 9:5606(D). However, the peremptive periods "shall not apply in cases of fraud." La. R.S. § 9:5606(C).

"The peremptive period will begin to run 'even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of the same." *TCI Packaging, LLC v. HUB Int'l Midw. Ltd.*, No. CV 19-10861, 2020 WL 730329, at *5 (E.D. La. Feb. 13, 2020) (quoting *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 672 (5th Cir. 2007)). "Constructive knowledge" refers to "whatever notice is enough to excite attention and put the injured party on guard and call for inquiry." *Id.* (quoting *Campo v. Correa*, 828 So. 2d 501, 510-11 (La. 2002)). "Such notice is 'tantamount to knowledge or notice of everything to which a reasonable inquiry might lead[.]" *Id.* (quoting *Campo*, 898 So. 2d at 511).

contends that the Proposal executed by the parties expressly provides that it is "governed by the laws of the State of Illinois, without regard to its conflict of law rules," and therefore Illinois law governs its claims. R. Doc. 14, pp. 8-13 (quoting R. Doc. 9-6, p. 43); R. Doc. 20, pp. 1-2.

A federal court in diversity jurisdiction shall apply the choice of law principles of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in [a given state] must conform to those prevailing in [the forum state's] state courts. Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side."). Thus, this Court must apply Louisiana's choice of law principles to determine which state's substantive law applies to the Proposal.

Louisiana law generally recognizes and enforces contractual choice-of-law provisions, but these provisions are not automatically controlling. *See* La. Civ. Code art. 3540; *Roberts v. Energy Dev. Corp.*, 235 F.3d 935, 939 (5th Cir. 2000). Rather, Louisiana Civil Code Article 3540 provides that "issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." La. Civ. Code art. 3540. Article 35437, in turn, provides the general rule that of conventional obligations are "governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code art. 3537. Courts are to consider such policies in light of the following factors: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract; (2) the nature, type, and purpose of the contract; and (3) the policies of promoting commercial intercourse. *Id. See also Travelers Cas. & Sur. Co. of Am. v. Wright Ins. Agency, Inc.*, 404 F.3d 927, 938-39 (5th Cir. 2005). As explained by

the Fifth Circuit Court of Appeals:

> In simplest terms, we must first determine which state's law would be otherwise applicable in the absence of the choice of law provision. We then determine whether application of the chosen law would contravene the otherwise applicable state's public policy. Our overall objective is to determine the state whose policies would be most seriously impaired if its law was not applied, and this is done by comparing the strength and pertinence of the competing states' policies in light of the various factors set forth in Article 3537.

*Roberts*, 235 F.3d at 939.

Here, the Proposal contains an express provision stating that "[t]he Proposal and these Terms are governed by the laws of the State of Illinois, without regard to its conflict of law rules." R. Doc. 9-6, p. 43. Thus, the first step of the Court's analysis is to determine whether Lou-Con's tort claims against AJG fall within the scope of the Proposal's choice-of-law provision. If they do, the Court must then determine whether enforcement of that provision is nevertheless precluded under Article 3540 because application of Illinois law would contravene Louisiana public policy.

First, the Court concludes that Lou-Con's present claims do fall within the scope of the Proposal's choice-of-law provision. AJG argues that Louisiana law governs notwithstanding the choice-of-law provision "because Lou-Con did not bring a claim under the Proposal" and under the express terms of the choice-of-law provision, "it only applies to disputes brought under the Proposal." R. Doc. 17, p. 2. However, Lou-Con's claims arise directly from AJG's alleged performance of the insurance brokerage services contemplated by the proposal. Lou-Con alleges in its Petition that AJG advised Lou-Con regarding the appropriate amount and type of insurance coverage for the Building, represented that the proposed $1,700,00.00 valuation would govern the adjustment of any partial loss, procured the Policy based on those representations, and then failed to obtain the type of coverage it allegedly promised. R. Doc. 1-1, pp. 4-8. Accordingly, even though Lou-Con characterizes its causes of action as negligence, failure to procure insurance, negligent misrepresentation, and breach of professional duties, each alleged duty exists only

8

because AJG agreed to provide insurance brokerage services pursuant to the Proposal. Moreover, nothing in the language of the choice-of-law provision suggests that it is limited solely to claims for breach of contract. Instead, resolution of Lou-Con's claims requires that the Court determine the nature and scope of AJG's obligations under the Proposal and whether AJG fulfilled those obligations when procuring the Policy. Because AJG's alleged misconduct cannot be evaluated without examining the parties' rights and obligations under the Proposal, Lou-Con's claims fall within the scope of the Proposal's choice-of-law provision.

Next, the Court considers whether, despite the Proposal's choice of law provision, Louisiana public policy requires application of Louisiana law. AJG argues that Louisiana law governs notwithstanding the Proposal's Illinois choice-of-law provision and, therefore, Lou-Con's claims are subject to the peremptive periods established by Section 9:5606. R. Doc. 9-1, pp. 6-12; R. Doc. 17, pp. 2-7. Lou-Con, in turn, argues that the parties expressly agreed that Illinois law would govern the Proposal and, therefore, Illinois' 2-year statute of limitation on actions against insurance agents applies. R. Doc. 14, pp. 8-9 (citing 735 Ill. Comp. Stat. 5/13-214.4 (1996)).

The Court recognizes that Louisiana has significant contacts with the underlying dispute. Lou-Con is a Louisiana corporation, the insured Property is located in Louisiana, and the alleged loss occurred in Louisiana. Louisiana likewise has a legitimate interest in regulating insurance producers operating within the state, including through the peremptive periods established by Section 9:5606. *See Travelers Cas. & Sur. Co. of Am.*, 404 F.3d at 929 ("[I]n passing § 9:5606 . . ., Louisiana has evinced a desire to regulate the insurance industry with respect to tort and contract lawsuits.").

However, the Court also recognizes Illinois' substantial relationship with the transaction. AJG drafted the Proposal, which expressly selects Illinois law to govern the parties' relationship,

without regard to its conflict of law rules. R. Doc. 9-6, p. 43. Illinois possesses a legitimate interest in the enforcement of contracts voluntarily established by commercial entities across state lines, particularly where the agreement at issue expressly selects Illinois law to govern the parties' relationship. Likewise, Louisiana's conflict-of-laws articles expressly recognize the importance of "facilitating the orderly planning of transactions and promoting multistate commercial intercourse" through enforcement of contractual choice-of-law provisions. *See* La. Civ. Code arts. 3537, 3540.

On the present record, the Court is not persuaded that enforcement of the parties' chosen law would contravene a sufficiently strong Louisiana public policy to justify disregarding their express agreement. Although Section 9:5606 reflects the Louisiana legislature's policy of limiting actions against insurance agents and brokers, the Court cannot conclude, at the Rule 12(b)(6) stage and on the arguments presented, that this policy outweighs the competing interests recognized by the Civil Code or otherwise renders unenforceable the parties' contractual selection of Illinois law. To conclude otherwise would permit AJG to reply upon the Proposal for purposes of defining the parties' rights and obligations while simultaneously disavowing the Proposal's express choice-of-law provision when Louisiana law provides a more favorable defense.

Accordingly, the Court concludes that, for purposes of resolving the present Motion, the Proposal's Illinois choice-of-law provision is enforceable and that Illinois substantive law governs Lou-Con's claims against AJG. Because AJG's argument for dismissal under Section 9:5606 depends upon application of Louisiana law, that argument fails. The Court therefore declines to dismiss Lou-Con's claims as perempted and next turns to AJG's remaining Rule 12(b)(6) arguments.

### c. *Breach of a Legally Recognized Duty*

In the alternative to its peremption argument, AJG contends that, even if Lou-Con's claims are timely, the Petition fails to state a claim because it does not identify the breach of any legally recognized duty owed by AJG. R. Doc. 9-1, pp. 10-12. According to AJG, Lou-Con's allegations stem from its disagreement with Allianz's adjustment of the roof-loss claim and its mistaken belief that the Building's $1,700,000.00 valuation should have been proportionately applied to each individual component part. *Id.* AJG further contends that the Policy provided the coverage Lou-Con purchased and that Lou-Con's allegations concerning the valuation of its roof loss do not establish a breach of duty. *Id.*

Lou-Con responds that its claims are not based on Allianz's adjustment of the claim but on AJG's own representations during the procurement process. According to Lou-Con, AJG advised that the Building's insured value had to be increased to $1,700,000.00, represented that the increased valuation would govern the adjustment of any partial loss, and procured a policy that allegedly failed to provide the coverage AJG represented it would provide. R. Doc. 14, pp. 16-22.

Accepting the Petition's well-pleaded allegations as true, the Court concludes that Lou-Con has plausibly alleged the breach of a legally recognized duty. The Petition alleges that AJG undertook obligations during the policy renewal process, made specific representations concerning how partial losses would be valued under the proposed coverage, and procured insurance that allegedly failed to conform to those representations. Whether AJG in fact made those representations, whether they were accurate, and whether Lou-Con reasonably relied upon them present factual disputes that cannot be resolved on a Rule 12(b)(6) motion.[4] Accordingly, dismissal

---

[4] Because the Court concludes that Illinois law governs Lou-Con's claims, it does not rely on the parties' discussion of Louisiana law governing insurance brokers. *See* R. Doc. 9-1, pp. 10-11; R. Doc. 17, pp. 6-8. Moreover, AJG has

on this basis is not warranted.

### d. Failure to Allege a Cognizable Loss

In the alternative, AJG next argues that Lou-Con's claims fail because it has not demonstrated that it has suffered any "loss." R. Doc. 9-1, pp. 13-15. Specifically, it contends that "Lou-Con received exactly what it elected" because it voluntarily elected Actual Cash Value ("ACV") coverage and received an ACV payment following the September 2024 roof loss. *Id.* AJG theorizes that "Lou-Con has not articulated any loss in its Petition because no adjuster or construction professional estimated it would cost nearly $800,000 to replace the Building's roof." *Id.* at p. 13. Additionally, AJG reasons that because "Lou-Con alleges no facts showing the roof actually cost $800,000 to replace," an award of "the difference between what the value of the Loss should have been based on AJG's $1,700,000.00 valuation of the Building and what Allianz paid" would constitute an impermissible windfall rather than recovery for any legally cognizable injury caused by AJG. *Id.* at p. 14. Such a windfall, AJG argues, "would violate the 'basic principle' of Louisiana insurance law 'that an adequately insured person should incur neither economic gain nor loss when his property is destroyed.'" *Id.* (quoting *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 520 (5th Cir. 2010) (quoting *Bingham v. St. Paul Ins. Co.*, 503 So. 2d 1043, 1045 (La. App. 2d Cir. 1987))).

Lou-Con responds that its claims do not arise merely because Allianz adjusted the claim pursuant to the Policy's terms. Rather, Lou-Con alleges that AJG recommended increasing the Building's insured value to $1,700,000, represented that the increased valuation would govern the adjustment of any partial loss, and induced Lou-Con to purchase more expensive coverage based on those representations. According to its Petition, Lou-Con sustained economic damages as a

---

not identified any material conflict between Illinois and Louisiana law on the pleading requirements for these claims.

12

result of AJG's alleged misconduct. For these reasons, dismissal on the basis of failure to allege a cognizable loss is not warranted.

### e. Arbitration

Finally, in its opposition, Lou-Con alternatively requests that, if the Court declines to deny AJG's Motion on the merits, it stay this action and compel arbitration pursuant to the "Dispute Resolution" provision of the Proposal. R. Doc. 14, p. 2. Lou-Con notes that the Proposal includes a mandatory mediation and/or arbitration provision requiring certain disputes between the parties to be resolved through binding arbitration. *Id.* (citing R. Doc. 9-6, p. 42). AJG responds that Lou-Con waived any right to arbitrate by filing suit in state court and actively litigating this matter before invoking the dispute resolution provision. R. Doc. 17, pp. 8-9. In its sur-reply, Lou-Con disputes that waiver occurred and argues that questions of waiver are for the arbitrator, rather than the Court, to decide. R. Doc. 20, p. 2 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Evans v. Chicago Newspaper Guild-CWA*, 174 N.E.3d 964, 968 (Ill. App. 1 Dist., 2020); *Int'l. River Ctr. v. Johns-Manville Sales Corp.*, 861 So. 2d 139, 139 (La. 2003)).

The Court need not resolve issues relating to arbitration at this time because neither party has moved to compel arbitration or otherwise sought to enforce the arbitration provision. Instead, Lou-Con has only raised arbitration as alternative relief in opposition to AJG's Rule 12(b)(6) motion. Because the Court concludes that AJG has not established its entitlement to dismissal under Rule 12(b)(6), it is unnecessary to determine whether the parties' dispute is subject to arbitration or whether either party has waived any contractual right to arbitrate. The Court therefore denies AJG's Motion without expressing any opinion regarding the applicability, enforceability, or waiver of the arbitration provision.

Accordingly,

13

**IT IS ORDERED** that the Motion to Dismiss (R. Doc. 9) filed by Defendant, Arthur J. Gallagher & Co. ("AJG") is **DENIED**.

New Orleans, Louisiana, this 10th day of July 2026.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

14